# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

JASON K. BEHRENS,

      Plaintiff,

v.                                   Case No. 6:04-CV-715-ORL-22-JGG

JERRY REGIER, as Secretary of
the Florida Department of Children
and Families in his official and individual
capacity; MIKE WATKINS, as District 7
Administrator of the Florida Department
of Children and Families in his official and
individual capacity; DAVID DENNIS,
former District 7 Administrator of the
Florida Department of Children and Families
in his individual capacity; and WILLIAM
PENLEY, former District 7 Administrator
of the Florida Department of Children and
Families in his individual capacity,

      Defendants.

_____/

## MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANT, DAVID DENNIS' MOTION TO DISMISS

    Plaintiff, JASON K. BEHRENS (hereinafter referred to as "Plaintiff"), by and through

his undersigned counsel, and pursuant to Local Rule 3.01(a), files this Memorandum of Law in

Opposition to Defendant, DAVID DENNIS, in his individual capacity, (hereinafter referred to as

"Defendant Dennis "), Motion to Dismiss, and states as follows:

### I.      Background.

    Prior to 1995, in order to satisfy constitutional requirements, Florida Statutes §415.504

provided a person charged with child abuse a formal administrative hearing for purposes of

expunging a confirmed report.  In 1995, however, the statute was amended and renumbered and

the provision for granting the right to a hearing was removed.  Florida Statutes §415.504 was renumbered as Florida Statutes §39.201 and amended by Laws 1998, c. 98-403, §31, effective October 1, 1998.  The word "expunge" and its various permutations ("expunging"; "expunged"; "expungement"; "expunction") no longer appears in §39 of the Florida Statutes.

Section 415.504(4)(f) set out specific procedures for an administrative hearing.  Once a child, their parent or guardian or a perpetrator was named and placed on the central abuse registry, they, along with their legal counsel, had a right to a copy of any proposed or confirmed report at the closing of the investigation.  Subsection (4)(g) gave the individual who was entitled to the report the right to submit a written rebuttal which might have become part of the report.  Thereafter, subsection (4)(h) explained that the individual may have had additional appeal rights, which would be explained to them in writing when appropriate and at the conclusion of the hearing.  Section (j)(2)(b) provided notice to the individuals involved if there was a proposed confirmed report.  The statute instructed that the individual would have been given a copy of the report, the chance to submit a written explanation or rebuttal with respect to the report, as well as an explanation that they have the right to request an amendment or expungement of the report.  However, when the statute was amended and renumbered no requirements giving the accused a due process hearing remained in the statute.

Prior to 1995, Chapter 415 stated that if an individual asked for an amendment or an expungement, the secretary could amend the record.  The Secretary had thirty (30) days to act on this and if the Secretary did not act within thirty (30) days or just refused, the individual had the right to an administrative hearing pursuant to Chapter 120 to contest whether the record should be amended or expunged.  The individual was given thirty (30) days after the denial or the thirty first day after their request if the Secretary did not answer.  At the hearing the department was

required to prove by a preponderance of the evidence that the alleged perpetrator committed the abuse.

The court in *J.L. v. Department of Health & Rehabilitative Services*, 683 So.2d 653 (Fla. 4th DCA 1996) explained the changes to the amended statute.  The court stated in relevant part:

> The amended statute no longer requires the classification of child abuse reports, nor does it afford a person charged of child abuse the right to a formal administrative hearing for purposes of expunging the report. §415.504, Fla. Stat. (1995).  The 1995 version also established a central abuse hotline to replace the registry and tracking system,...

In conflict to the old statute, the new statute does not provide for a due process hearing for an alleged child abuser.  Currently, a verified child abuser is subject to arbitrary and capricious decisions.  Defendant Dennis, however, had the authority and ability to provide Plaintiff a due process hearing or procedural process to permit Plaintiff to challenge his verified child abuser status but simply refused and failed to provide Plaintiff any ability to challenge his verified child abuser status, even after a court of law in a civil dependency case dismissed charges against Plaintiff for insufficient evidence and all criminal investigations were closed as unfounded/accidental.  This case challenges Defendant Dennis's actions in labeling and continuing to maintain that Plaintiff was a verified child abuser and then failing and refusing to provide Plaintiff any ability to challenge Defendant Dennis's decisions and actions and seeks monetary damages against Defendant Dennis in his individual capacity for his actions.

## II.  Pleading Standard.

A complaint should not be dismissed for failure to state a claim under Rule 12(b)(6) Fed.R.Civ.P., unless it appears beyond a reasonable doubt that a plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).  When reviewing a motion to dismiss, a court must review the complaint in the

light most favorable to plaintiff and accept all allegations of the complaint as true.  *Conley,* 355 U.S. at 41; *Scheuer v. Rhodes,* 416 U.S. 232 (1974) (overruled on other grounds by *Davis v. Scherer*, 468 U.S. 183 (1984)); *Howry v. Nisus, Inc.,* 910 F.Supp 576 (M.D. Fla. 1985).  The issue is not whether plaintiff will prevail, but whether plaintiff is entitled to offer evidence in support of his claim.  *Hishon v. King,*  467 U.S. 69 (1984); *Bradberry v. Pinellas County,* 789 F.2d 1513 (11th Cir. 1986).

Defendant Dennis concedes that all facts alleged in the case are accepted as true and are construed in the light most favorable to the Plaintiff except when the facts alleged are internally inconsistent or when they run counter to facts of which the Court can take judicial notice.  *Gersten v. Rundle,* 833 F. Supp. 906, 910 (S.D. Fla. 1993).  Plaintiff alleges sufficient factual allegations to support a claim against Defendant Dennis in his individual capacity.[1]

Plaintiff has alleged inter alia that Defendant  Dennis did the following:  that Defendant Dennis refused to provide Plaintiff any procedure or ability to obtain a due process hearing to clear his name (Paragraph 38); that Defendant Dennis violated clearly established law in direct violation of the United States Constitution (Paragraph 39); that Defendant  Dennis's acts violated the clearly established constitutional rights of Plaintiff, rights of which every reasonable member of the public or governmental entity should have known (Paragraph 40); that Defendant  Dennis knew that his actions in not permitting a due process hearing would deprive Plaintiff of his constitutional rights, but proceeded with his unlawful actions with willful disregard for the consequences of his actions (Paragraph 41); and that as a direct result of Defendant Dennis's actions Plaintiff has suffered damages, which exist to this day (Paragraph 42).  The above allegations, in and of themselves, along with the remaining allegations in the Complaint, if

---

[1] Plaintiff has asserted federal constitutional claims against Defendant Dennis in his individual capacity in Counts I, II and III. Defendant Dennis is not included and is not being sued in Counts IV and V.

proven to be true, will show that Defendant  Dennis violated Plaintiff's clearly established constitutional rights.   Defendant Dennis is the former District 7 Administrator of DCF. Defendant Dennis was in a position of making policies and procedures and had full authority to permit a procedure to challenge the verified child abuser status but refused to allow any challenge and continued to label Plaintiff as a verified child abuser.   Under the United States Supreme Court decision of *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993), and the Eleventh Circuit decision in *GJR Investments v. County of Escambia, Florida*, 132 F.3d 1359 (11th Cir. 1998), Plaintiff has met his pleading requirements.

### III.  Respondeat Superior.

Defendant Dennis argues that respondeat superior cannot be used as a basis of liability under §1983.   Defendant Dennis is missing the point.   Defendant Dennis is being sued in his individual capacity solely for his own acts.   Respondeat superior is not the issue.

### IV.  Plaintiff has alleged a sufficient causal connection.

Defendant Dennis alleges that there is no causal connection and that Plaintiff failed to allege in his Complaint that Defendant Dennis participated in the preliminary home study of the Plaintiff or that he participated in the original child abuse report.   These arguments are misplaced.   Rather, Plaintiff is alleging that Defendant Dennis's actions affected Plaintiff's preliminary home study by verifying him as a verified child abuser without a due process name clearing hearing thus precluding him from adopting another child.   Not only did Defendant Dennis verify Plaintiff as a child abuser without a due process hearing, but he held the ability and specifically refused to provide Plaintiff with a hearing or any other ability to challenge his status. Being classified a child abuser and losing the ability to adopt clearly meets the "stigma plus" test

to establish a constitutional violation of Plaintiff's liberty interest, which is protected under the due process clause.  See *Paul v. Davis*, 424 U.S. 693 (1976).  See also Section IX below.

Plaintiff concedes that there must be a causal link between the supervisor and the constitutional violation; however, Plaintiff is alleging that Defendant  Dennis's actions directly caused the constitutional violations because as the former District 7 Administrator of DCF, Defendant Dennis implemented the policies and procedures which deprived Plaintiff of a due process hearing and as alleged Defendant Dennis specifically refused to provide any procedure to challenge Plaintiff's verified child abuser status.

Plaintiff is alleging that Defendant Dennis's policy making procedures violated Plaintiff's constitutional rights and that Defendant Dennis refused to allow any due process hearing.  Case law states "[s]upervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation".  *Brown v. Crawford,* 906 F.2d 667, 671 (11th Cir.1990) citing *Lewis v. Smith,* 855 F.2d 736, 738 (11th Cir. 1998) (per curiam); *Barksdale v. King* 699 F.2d 744 (5th Cir.1993). "In addition, the causal connection may be established and supervisory liability imposed where the supervisor's 'improper custom or policy…results in deliberate indifference to constitutional rights'".  *Hartley v. Parnell,* 193 F.3d 1263, 1269 (11th Cir. 1999) citing *Rivas v. Freeman,* 940 F.2d 1491, 1495 (11th Cir.1991) (citing *Zatler v. Wainwright,* 802 F.2d 397 (11th Cir. 1986)).  Defendant Dennis's policies and actions in this case clearly resulted in deliberate indifference to the Plaintiff's rights.  It is clearly established constitutional law that individuals are entitled to due process if their liberty interests are being infringed.  Therefore, there is not only a causal connection between Defendant Dennis's actions but a direct connection to the violation of Plaintiff's constitutional rights.  In

fact, in §1983 litigation, like in tort actions, a defendant is responsible for the natural consequences of his actions. *Hewett v. Jarrard,* 786 F.2d 1080, 1087 (11th Cir. 1986).   Finally, Plaintiff has alleged that Defendant Dennis specifically failed to allow a due process hearing and refused to allow him to challenge his verified abuser status.

### V.   Defendant Dennis's assertion of qualified immunity defense must be rejected.

Defendant Dennis's qualified immunity defense must be rejected at this time.   In *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982), the Supreme Court held that government officials can be held liable for civil damages if their conduct violates clearly established constitutional rights to which a reasonable person should have known.   In analyzing the *Harlow* test, the Eleventh Circuit in *Rich v. Dollar*, 841 F.2d 1558, 1563-1564 (11th Cir. 1988), quoting *Zeigler v. Jackson*, 716 F.2d 847, (11th Cir. 1983), formulated a two-part analysis for determining qualified immunity:

> (1)     The defendant public official must first prove that 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'
>
> (2)     Once the defendant public official satisfies his burden of proving that moving forward with the evidence, the burden shifts to the plaintiff to show a lack of good faith on Defendant Dennis's part.   This burden is met by proof demonstrating that defendant public official's actions 'violated clearly established constitutional law.'

Under the second part of this test, this court must determine whether or not there are sufficient acts alleged against Defendant Dennis that if true, would show that he violated clearly established law.   Defendant Dennis is not immune from liability for monetary damages for the actions alleged.

Plaintiff alleges in his Complaint that Defendant Dennis violated clearly established law by continuing to maintain Plaintiff's status as a verified child abuser and denying and refusing to

provide Plaintiff a due process hearing.    Defendant Dennis either knew or should have known that his actions would violate clearly established constitutional laws.

In *Hope v. Pelzer*, 536 U.S. 730 (2002) the United States Supreme Court rejected the "materially similar" test and applied a "fair warning standard" as announced in *United States v. Lannier*, 520 U.S. 259 (1997).  Cases cited by Defendant Dennis are all cases decided prior to *Hope*.  If Defendant Dennis is provided "fair warning" that his conduct violates constitutional rights, then qualified immunity will not be available.

Defendant Dennis had more than constitutional "fair warning" that his actions violated Plaintiff's rights.  As the Supreme Court held in 1971, a protectible liberty interest may arise "where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him…"  *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971).  In *Board of Regents v. Roth*, 408 U.S. 564, 573 (1972), the United States Supreme Court held an employee's liberty interest could be implicated if he was dismissed on charges that imposed a stigma or other disability to take advantage of employment opportunities.  Finally, in *Paul v. Davis*, 424 U.S. 693, 701 (1976), the Supreme Court held loss of reputation must be coupled with some other tangible element to give rise to a protectible liberty interest.  There can be no doubt that a status of child abuser, especially if you are a police officer as Plaintiff, damages one's reputation but Plaintiff has alleged more.  Plaintiff also alleges that he is being deprived of another tangible right or status, the right or status to adopt another child.  Accordingly, Plaintiff meets the stigma plus test.

In *Valmonte v. Bane*, 18 F.3d 992 (2d Cir. 1994) the Court ruled that being placed on the Child Abuse Registry with the loss of an ability to seek employment as a child care provider establishes a protectible liberty interest.  In this case the liberty interest is even greater because

Plaintiff is losing not only reputation but the opportunity and ability to adopt another child of his choice.  The above case law is not new and Defendant Dennis had to know, should have known and had "fair warning" that a denial of any hearing would affect Plaintiff's liberty interest.

The argument that Defendant Dennis was acting within the scope of his authority will not protect him when he violates clearly established constitutional law.  Plaintiff has therefore met his pleading requirements by alleging that his constitutional rights are clear and should have reasonably been known by Defendant Dennis.

## VI.   Right to adopt.

Defendant Dennis relies on *Lofton v. Secretary of the Department of Children and Family Services,* 358 F.3d 804, 809 (11th Cir. 2004) (*citing, Fla. Dept. of Health & Rehab. Servs. v. Cox,* 627 So.2d 1210, 1216 (Fla. 2d DCA 1993*), aff'd in relevant part,* 656 So.2d 902 (Fla. 1995) *Jeffrey Buckner and Debbie Buckner v. Family Services of Central Florida, Inc.* 29 Fla. L. Weekly D1695, 2004 WL 1635858, 2004 Fla. App. LEXIS 10982, (Fla. 5th DCA, July 23, 2004) for his argument that under Florida Law there is no fundamental right to adopt.  However, the Supreme Court of Florida established that there is a fundamental right to adopt in this state.  See *Grissom v. Dade County,* 293 So.2d 59, 62 (1974).  This Florida Supreme Court case has not been overruled nor cited by Defendant Dennis or the cases that he relies on..

*Grissom* states:

> the right to legally have children and the right of marriage, although both statutorily created, have been held to be 'basic civil rights of man'. *Skinner v. Oklahoma,* 316 U.S. 535 at 541, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942), the fundamental right to have children either through procreation or adoption is as basic as to be inseparable from the rights to 'enjoy and defend life and liberty, [and] to pursue happiness,' Florida Constitution Article I, §2 F.S.A. (1968).

*Grissom* also ruled that adoption is protected as a liberty interest under the Florida Constitution and not just a state created right.

The cases that Defendant Dennis relies on are also distinguishable.  In the *Lofton supra*, and *Florida Department of Health and Rehab Services supra* the parties in those cases were enjoined from adopting due to a statute which does not allow Homosexuals to adopt children. There is no statute enjoining Plaintiff and his wife from adopting a child, in fact, they already have one adopted child.  Plaintiff is being enjoined from the ability to adopt further children due to his name being placed on a child abuse registry without being given a due process hearing. Secondly, the parties in *Buckner supra* are trying to adopt a child that DCF has not put up for adoption.  Plaintiff is trying to adopt a child through an adoption agency that is up for adoption. Therefore these cases are distinguishable.

Nevertheless, Plaintiff's claims do not necessarily rise or fall on whether adoption is a right or statutory privilege.  Even if it is only a statutory privilege, a party cannot be denied a privilege without the basic due process right of the opportunity to be heard.  Even before privileges are to be taken away an individual is entitled to due process of law.  Case law supports that even the statutory privilege to drive cannot be taken away without a due process of law.  See *Bell v. Burson*, 402 U.S. 535 (1971).  The *Bell* Court noted a due process hearing must be meaningful and appropriate to the nature of the case.

## VII.   <u>Plaintiff's right to privacy has been implicated</u>.

Contrary to Defendant Dennis's argument, Plaintiff is not alleging that adoption is solely a private matter.  Plaintiff is, however, alleging that his federal constitutional rights to privacy are being implicated by being foreclosed from adopting another child.  The rights provided to citizens through the Federal Constitution are implicated when a state action infringes on them and deprives a citizen of their rights. Defendant Dennis was a state actor; he was employed by, and received his authority to act from the State of Florida.

*Meyer v. Nebraska,* 262 U.S. 390 (1923) held that the Fourteenth Amendment denotes the right of the individual to marry, establish a home, bring up children, and generally to enjoy these privileges long recognized at common law as essential to the orderly pursuit of happiness by free men.  The court continues by saying that the liberty interest of individuals "may not be interfered with under the guise of protecting the public interest, by legislative action which is arbitrary or without reasonable relation to some purpose within the competency of the state to effect." *Id at 399-400.*

The state cannot just infringe on a person's right to raise or adopt children; there must be some compelling reason and it must be the least intrusive means possible.  Defendant Dennis is infringing on Plaintiff's right to raise his children by stopping him from being able to adopt and by enjoining him from giving his children other siblings.  This is not the least intrusive means.  The least intrusive means would be to afford the Plaintiff a due process hearing which would still satisfy the state's interest in adoption and protect the Plaintiff's privacy rights.

All parents are constitutionally entitled to a hearing on their fitness as a parent before their children are taken away.  *Stanley v. Illinois*, 405 U.S. 645 (1972).  Plaintiff concedes that an adopted child has not been taken away; however, Plaintiff's rights to future children have been

taken away without a hearing.  Therefore, Plaintiff's constitutional rights to privacy have been violated.

Other district courts have realized how important it is for the state to stay out of an individual's right to privacy.  In *Bohn v. County of Dakota,* 772 F.2d 1433, (8th Cir. 1985) the court stated that the stigma an individual suffered when they were reported as a child abuser has undoubtedly eroded his family solidarity internally and impaired the family's ability to function in the community.  The court found that there were clear adverse effects on the integrity and stability of the family, and the court found that this individual's reputation was a protected interest.  The facts of *Bohn* are similar to Plaintiff's case, as the parents were accused of abusing their child; however, it was later determined that they did not abuse their child.  The case was classified as unsubstantiated and child abuse was ruled out, but this individual was on the list as a verified child abuser.  In *Bohn* the state did have a procedure to challenge the classification.  In Plaintiff's case, Defendant Dennis refused to allow for any such procedure.  In *Bohn,* the Court noted that "the privacy and autonomy of family relationships involved in such a case are unarguably among the protectable interests which due process protects.  We can conceive of no more important relationship, no more basic bond in American society that the tie between parent and child."  *Id at 1435*.  <u>See</u> <u>also</u> *Pierce v. Society of Sisters*, 268 U.S. 510 (1925).  Plaintiff has asserted a proper cause of action for violation of privacy.

**VIII.**  <u>**Defendant Dennis's assertion that Plaintiff has not complied with adoption**</u>
     <u>**law is misplaced.**</u>

Plaintiff has sufficiently alleged conduct on the part of Defendant Dennis, which if true, shows that Defendant Dennis's actions have prevented Plaintiff from his ability to adopt an additional child.  Plaintiff is not required to allege that he applied to DCF to adopt a child or that DCF did the preliminary home study.  Rather, Plaintiff is alleging that Defendant Dennis's

actions of verifying Plaintiff as a verified child abuser without due process of law has precluded him from obtaining a favorable preliminary home study and as a result prohibits him from adopting a child.  Plaintiff alleges that he and his wife have attempted to adopt another child but were prevented from doing so (paragraph 22 of the Complaint).  In addition, Plaintiff alleges that he is unable to receive a favorable home study due to the stigmatization of his name remaining on the Child Abuse Registry as a verified child abuser and that without a favorable home study he would not be able to adopt another child (Paragraph 33 of Plaintiff's Complaint).  Plaintiff has done all he can do under Florida law.  Defendant Dennis fails to allege what Plaintiff can do to change his verified child abuser status.  Defendant Dennis asserts under Chapter 63, Florida Statutes, an agency may petition a court.  However, there is nothing in Florida law that permits or allows Plaintiff to do anything.  The reality of the situation is that once a verified child abuser status is indicated, adoption agencies, as in the instant case, refuse to go any further and simply disqualify Plaintiff from having the ability to adopt.

### IX.  Plaintiff has sufficiently alleged violation of procedural and substantive due process rights

Defendant Dennis cites to *Grayden v. Rhodes,* 345 F.3d 1225, 1232 (11th Cir. 2003) for what needs to be alleged to assert a procedural due process claim.   Plaintiff has met the three (3) pleading requirements.  Plaintiff has alleged a deprivation of liberty interest, state action and constitutionally inadequate process.  Due process has been defined as the right to be heard at a meaningful time and in a meaningful manner.  *City of Los Angeles v. David*, 538 U.S. 715 (2003).  Plaintiff has never been given an opportunity to be heard in any meaningful manner either prior to or post deprivation of his rights.

The Federal Constitution provides certain fundamental rights to the citizens of the United States.  One of these fundamental rights is the right to not be deprived of life, liberty or property

without due process of law.  Section 1 of the Fourteenth Amendment to the United States Constitution provides in pertinent part:

> No state shall make or enforce any law which shall abridge the privileges, or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property without due process of law; nor deny to any person within its jurisdiction equal protection of the laws.

The liberty and property interests that are protected by the United States Constitution are actually created by the individual states and rules and laws of the states define their dimensions. The state laws secure certain benefits to its individual citizens. *Board of Regents of State Colleges  v. Roth* 408 U.S. 564, 577 (1972).  The liberty interest, which implicates a due process hearing, may be a liberty interest created by state law.  In *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974), a prisoner who lost his gain time through a disciplinary action, which the court found to be a liberty interest created by state law, was entitled to a due process hearing.  Although the gain time was a state created right, the implications of the Fourteenth Amendment were engaged. Therefore the Court found that a state created right implicates the Fourteenth Amendment due process claim.  Plaintiff asserts above in Part VI a right to adopt.  Nevertheless, even if only a state created privilege is implicated Plaintiff is still entitled to due process of law.

As discussed above in Part V, Plaintiff's liberty interests are implicated and he meets the stigma plus test.  *Paul v. Davis,* 424 U.S. 693 (1976) stands for the proposition that in order to establish a liberty interest, which would implicate the Fourteenth Amendment safeguards, the individual must be stigmatized in connection with the denial of a right or status previously recognized under state law.  This is defined as the stigma plus test.

The Supreme Court held in *Paul* that a person's interest in reputation alone, "apart from some more tangible interest such as employment is not a protected liberty interest within the

meaning of the due process clause".  424 U.S. at 701.  What this means is that in order for a liberty interest to be implicated, the individual must not have only been given a bad reputation, but something more tangible like loss of employment or loss of a liberty interest must accompany the stigmatization.  *Paul* also states that there are a variety of interests that are comprehended in the meaning of liberty or property as meant in the due process clause.  They are recognized by virtue of their nature and the court has repeatedly ruled that the Fourteenth Amendment procedural guarantees are implicated whenever the state seeks to take these rights away.  Specifically it states:

> That there exists a variety of interests which are difficult of definition but are nevertheless comprehended within the meaning of either 'liberty' or 'property' as meant in the due process clause. These interests attain this constitutional status by virtue of the fact that they have been initially recognized and protected by state law, and we have repeatedly ruled that the procedural guarantees of the Fourteenth Amendment apply whenever the state seeks to remove or significantly alter that protected status.  424 U.S. at 710-11.

> There are other interests, of course, protected not by virtue of their recognition by the law of a particular state but because they are guaranteed in one of the provisions of the Bill of Rights which has been incorporated into the Fourteenth Amendment.  Section 1983 makes the deprivation of such rights actionable independently of state law.  424 U.S. at 711 n. 5.

Plaintiff has met this stigma plus test.  When Defendant Dennis placed and continued to maintain Plaintiff's name on the child abuse registry as a verified child abuser he was stigmatized.  Plaintiff met the plus part of the test when he was denied the ability to adopt. Plaintiff therefore meets the stigma plus test and under the United States and Florida Constitution Plaintiff is entitled to a due process hearing.

A due process hearing is essential when an individual's Fourteenth Amendment rights are violated.  The Supreme Court in *Wisconsin v. Constantineu,* 400 U.S. 433 (1971) stated "when a

person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential". *Osterback v. Crosby*, Jr., 16 Fla. L. Weekly Fed. D513 (quoting to *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)) [which] also states that "[t]he fundamental requirement of due process is the opportunity to be heard and it is an 'opportunity which must be granted at a meaningful time and in a meaningful manner.'"

*Board of Regents of State Colleges. v. Roth* 408 U.S. 564, 577 holds that when a liberty interest is implicated, in order to take that liberty interest away there must be due process of law. *Roth* held that a protected liberty interest may be implicated "where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him". *Id. at 569-70*. The court also noted that the requirements of due process apply and when protected interests are implicated, then some kind of procedural due process hearing is paramount.

## X.  Substantive due process.

The Fourteenth Amendment to the United States Constitution provides that "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property without due process of law…." This Amendment not only provides for procedural due process but it also provides substantive due process. Substantive due process requires that the laws that are invoked be fair and reasonable and have an adequate justification. Fairness of enforcing the laws does not matter if the substance of the law is so outrageous and unfair in that it violates due process.

*Harrah Independent School District Et Al., v. Martin,* 440 U.S. 194, 197 (1979) states that "the Due Process Clause of the Fourteenth Amendment not only accords procedural

safeguards to protected interests, but likewise protects substantive aspects of liberty against impermissible governmental restrictions".

The Eleventh Circuit stated in *Dacosta v. Nwachukwa,* 304 F.3d 1045, 1048 (11th Cir. 2002) that substantive due process protects the individual by preventing the government from abusing its power or employing its power as an instrument of oppression.  The court also noted (citing to *Collins v. City of Harker Heights*, 503 U.S. 115, 126 (1992) that the "substantive due process doctrine is designed to protect those fundamental rights that are implicit in the concept of ordered liberty" and it protects against state actors infringing on rights not explicitly mentioned in the Constitution, like the right to privacy.   The court also explains that a state created right, such as a tort law violation, may also be a violation of substantive due process if the action by the state shocks the conscience or interferes with rights implicit in the concept of ordered liberty–in other words, only if it affects individual rights guaranteed, explicitly or implicitly, by the Constitution itself."  304 F.3d at 1048.  Citing to *United States v. Salerno* 418 U.S. 739, 746 (1987).  The Tenth Circuit Court of Appeals stated in *Sherwood v. Oklahoma County*, 42 Fed. Appx. 353, 357 (10th Cir. (2002) that the due process guarantee has been applied to deliberate government decisions to deprive a person of their life, liberty or property.

Defendant Dennis deliberately denied Plaintiff a name clearing hearing which deprived him of his liberty interest in keeping his name off of the child abuse registry and his right to adopt another child.  Defendant Dennis clearly abused his power when he arbitrarily decided to keep the Plaintiff on the child abuse registry as a verified child abuser after both the criminal investigation and the dependency hearings were dismissed and found in favor of Plaintiff. Defendant Dennis acted in such a way as to shock the conscious and interfered with Plaintiff's rights.  Plaintiff has a right to liberty, due process and privacy.  Defendant Dennis's arbitrary and

capricious actions are a cause of Plaintiff's loss of his constitutional rights.   Defendant Dennis was making arbitrary decisions without rules, regulations and without guidelines.   Prior to 1995, Florida had specific guidelines that the State was required to follow but when the Statute was rewritten, these guidelines were left out and Defendant Dennis was left to make his own decisions.   Unfortunately, Defendant Dennis exercised his discretion in an arbitrary and capricious manner.   This is a violation of the substantive due process clause of the Fourteenth Amendment.

The Court in *DeShaney v. Winnebago County Department of Social Services,* 489 U.S. 189 (1989) holds that the state is not obligated to protect an individual from the actions of another private individual, but that they are responsible for protecting an individual when the state or state actor restrains an individual's freedom to act on his own behalf "through incarceration, institutionalization, or other similar restraint of personal liberty".   Id. at 200. Plaintiff's liberties in his movements were not restrained but the state did restrain his ability to act on his own behalf and interfered with Plaintiff's liberty interests.   Defendant Dennis made arbitrary decisions in regards to Plaintiff being placed on an abuse registry as a verified child abuser with no competent evidence and then keeping Plaintiff on the registry without due process of law.   The Plaintiff was not afforded any remedies or ability to challenge his status and Defendant Dennis had no guidelines as he went along, therefore leaving the decisions to the arbitrary whim of Defendant Dennis.   This restrains the Plaintiff's freedom to act on his own behalf because there is absolutely no remedy to clear his name.   This is a violation of Plaintiff's Substantive Due Process rights.

The *DeShaney* case, *Supra at 196,* also stands for the proposition that the due process clause of the Fourteenth Amendment was intended to prevent the government from abusing its

power or using its power as a way of oppression.  The court stated in relevant part, "The clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security.  It forbids the State itself to deprive individuals of life, liberty, or property without 'due process of law,'…." 489 U.S. 189 at 195.

Plaintiff concedes Defendant Dennis's argument that the child protection system is based upon the principle that the health and safety of the children served shall be of paramount concern and that Florida is looking at the best interest of the children.  As a police officer, Plaintiff does not argue with this principal.  What Plaintiff is complaining about is that Defendant Dennis has acted arbitrarily and capriciously and then denied him the opportunity to be heard.

## XI.  <u>Conclusion.</u>

For the foregoing reasons set forth above, Plaintiff, JASON K. BEHRENS, respectfully requests this court deny Defendant Dennis's Motion to Dismiss.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on August 19, 2004, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:   Kathleen Von Hoene, Esquire [Kathleen_von_hoene@oag.state.fl.us] and

[holley_arnett-perry@oag.state.fl.us]       and       Abbye       E.       Adelson,       Esquire

[Aadelson@grahambuilder.com].  I further certify that I mailed the foregoing document and the

notice of electronic filing by first-class mail to the following non-CM/ECF participants:  N/A.

/s/Howard S. Marks
**HOWARD S. MARKS, ESQUIRE**
Fla. Bar No. 0750085
Attorney for Plaintiff
GRAHAM, BUILDER, JONES, PRATT & MARKS, LLP
369 N. New York Avenue (32789)
P.O. Drawer 1690
Winter Park, FL  32790
Telephone: 407-647-4455
Facsimile: 407-740-7063
hmarks@grahambuilder.com