# United States Court of Appeals
For the Eleventh Circuit

No. 04-14820

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Aug 31, 2005
THOMAS K. KAHN
CLERK

District Court Docket No.
04-00715-CV-ORL-22-JGG

2005 OCT 25 PM 2:23
U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA
FILED

JASON K. BEHRENS,

Plaintiff-Appellant,

versus

JERRY REGIER, as Secretary of The Florida Department of Children and Families in his official and individual capacity,
MIKE WATKINS, as District 7 Administrator of the Florida Department of Children and Families in his official and individual capacity,
DAVID DENNIS, former District 7 Administrator of the Florida Department of Children and Families in his individual capacity,
WILLIAM PENLEY, former District 7 Administrator of the Florida Department of Children and Families in his individual capacity,

Defendants-Appellees.

A True Copy - Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit
By: ______
Deputy Clerk
Atlanta, Georgia

Appeal from the United States District Court
for the Middle District of Florida

JUDGMENT

It is hereby ordered, adjudged, and decreed that the attached opinion included herein by reference, is entered as the judgment of this Court.

Entered: August 31, 2005
For the Court: Thomas K. Kahn, Clerk
By: Jackson, Jarvis

SCANNED

ORIGINAL

CORRECTED

**Jason K. BEHRENS, Plaintiff–Appellant,**

**v.**

**Jerry REGIER, as Secretary of the Florida Department of Children and Families in his official and individual capacity, Mike Watkins, as District 7 Administrator of the Florida Department of Children and Families in his official and individual capacity, et al., Defendants–Appellees.**

**No. 04–14820.**

United States Court of Appeals, Eleventh Circuit.

Aug. 31, 2005.

**Background:** Prospective adoptive parent brought action against Florida Department of Children and Families (DCF), alleging that DCF officials erroneously labeled him as a "verified" child abuser, and that the presence of that stigmatizing information resulted in his inability to adopt another child. The United States District Court for the Middle District of Florida, No. 04-00715-CV-ORL-22-JGG, Anne C. Conway, J., dismissed the suit, and parent appealed.

**Holding:** The Court of Appeals, Black, Circuit Judge, held that prospective adoptive parent had no right under Florida law to adopt an unrelated child, despite having previously adopted a son, and therefore failed to satisfy the "plus" requirement of the stigma-plus test.

Affirmed.

**1. Constitutional Law ⚿255(1), 278(1)**

Injury to reputation, by itself, does not constitute the deprivation of a liberty or property interest protected under Due Process Clause. U.S.C.A. Const.Amend. 14.

**2. Constitutional Law ⚿255(1)**

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUG 31 2005
THOMAS K. KAHN
CLERK

Under stigma-plus test, a plaintiff claiming a deprivation based on defamation by the government must establish the fact of the defamation "plus" the violation of some more tangible interest before the plaintiff is entitled to invoke the procedural protections of the Due Process Clause. U.S.C.A. Const. Amend. 14.

**3. Constitutional Law ⚿255(1)**

To establish a liberty interest sufficient to implicate the Fourteenth Amendment safeguards, the individual claiming a deprivation based on defamation by the government must be not only stigmatized, but also stigmatized in connection with a denial of a right or status previously recognized under state law. U.S.C.A. Const.Amend. 14.

**4. Adoption ⚿4**

**Constitutional Law ⚿274(5)**

**Infants ⚿133**

Prospective adoptive parent was not deprived of a due process-protected liberty interest due to Florida Department of Children and Families' (DCF's) stigmatizing action classifying him as a "verified" child abuser without a name-clearing hearing, which interfered with his ability to adopt another child; prospective adoptive parent had no right under Florida law to adopt an unrelated child, despite having previously adopted a son, and therefore failed to satisfy the "plus" requirement of the stigma-plus test. U.S.C.A. Const.Amend. 14.

**5. Constitutional Law ⚿252.5**

Substantive component of the Due Process Clause protects those rights that are fundamental, i.e., rights that are implicit in

Synopsis, Headnotes and Key Number Classification
COPYRIGHT © 2005 Thomson/West

The Synopsis, Headnotes and Key Number Classification constitute no part of the opinion of the court.

the concept of ordered liberty. U.S.C.A. Const.Amend. 14.

**6. Adoption ⚖4**

**Constitutional Law ⚖274(5)**

Under Florida law, there was no fundamental right to apply for adoption, and therefore such application was not subject to substantive due process protection. U.S.C.A. Const.Amend. 14.

---

Appeal from the United States District Court for the Middle District of Florida.

Before BLACK and HULL, Circuit Judges, and O'KELLEY*, District Judge.

BLACK, Circuit Judge:

Plaintiff–Appellant Jason Behrens appeals the district court's dismissal of his claims against several current and former employees of the Florida Department of Children and Families (DCF). In his complaint, Behrens alleged that DCF officials erroneously labeled him as a "verified" child abuser, and that the presence of this stigmatizing information resulted in his inability to adopt another child. Behrens argued these actions violated, *inter alia,* his procedural and substantive due process rights under the Fourteenth Amendment. The district court granted Defendants–Appellees' motion to dismiss, finding that Behrens' complaint failed to allege the deprivation of a constitutionally-protected liberty or property interest. We affirm the district court's decision.

I. BACKGROUND

In reviewing the district court's grant of a motion to dismiss, we are required to accept the facts alleged in the complaint as true and view them in the light most favorable to the plaintiff. *Swann v. S. Health Partners, Inc.,* 388 F.3d 834, 836 (11th Cir.2004). We, therefore, set forth the facts of this case in the light most favorable to Behrens.

Jason Behrens and his wife, Debra Behrens, reside in the State of Florida. They are currently raising two children: one child is the couple's biological daughter, and the other child is an adopted son. The Behrenses are unable to have any more biological children, but they hope to add to their family through adoption.

One day, while Behrens was carrying his adopted son, he accidentally tripped over a child safety gate in his home and fell to the ground. The child, who was nine months old at the time, sustained a head injury from the fall. Behrens rushed his son to the Urgent Care Center, which instructed him to take the child to the emergency room. After the child arrived at the emergency room, the DCF was notified of possible child abuse. The DCF "put a hold" on the child, delaying the release of custody to his parents. Subsequently, civil dependency and criminal investigations were initiated. The criminal investigation was closed because the alleged abuse was determined to be unfounded and/or accidental. Similarly, a Florida circuit court dismissed the civil dependency proceedings, finding that child abuse was not shown by a preponderance of the evidence.[1] Despite the

* Honorable William C. O'Kelley, United States District Judge for the Northern District of Georgia, sitting by designation.

1. Florida courts have explained that "[i]n a dependency proceeding, the department must establish its [child abuse] allegations by a preponderance of the evidence." *R.M. v. Dep't of Children & Families,* 886 So.2d 329, 331 (Fla. 5th DCA 2004).

closure of the criminal investigation and the circuit court's finding, the DCF "verified" the child abuse allegations against Behrens.

Under Florida law, the DCF must maintain "a central abuse hotline" to receive reports of "known or suspected child abuse, abandonment, or neglect." Fla. Stat. Ann. § 39.201(4). While these reports are generally kept confidential, they may be disclosed to "[e]mployees, authorized agents, or contract providers of the [DCF], the Department of Health, or county agencies responsible for carrying out ... [l]icensure or approval of adoptive homes." *Id.* § 39.202(2)(a).[2]

Florida's adoption laws state that before a child is placed in an "intended adoptive home, a preliminary home study must be performed." *Id.* § 63.092(3). In addition to considering several other factors, the home study must include checking "the department's central abuse registry." *Id.* § 63.092(3)(b). A child may not be placed in a prospective adoptive home if the preliminary home study was unfavorable. *Id.* § 63.092(3). When there has been an unfavorable home study, "the adoption entity may, within 20 days after receipt of a copy of the written recommendation, petition the court to determine the suitability of the intended adoptive home." *Id.* In making its determination, "the court must consider the totality of the circumstances in the home." *Id.*

Behrens and his wife would like to adopt another child and have attempted to do so. They have, however, been unsuccessful. Behrens believes he has been precluded from adopting another child because the DCF has damaged his reputation by classifying him as a "verified" child abuser. Behrens contends he and his wife have been unable to receive a favorable home study due to the stigmatization.[3]

On May 14, 2004, Behrens filed a complaint under 42 U.S.C. § 1983 against the following four individuals: (1) Jerry Regier, the Secretary of the DCF, in his official and individual capacity; (2) Mike Watkins, the District 7 Administrator of the DCF, in his official and individual capacity; (3) David Dennis, the former District 7 Administrator of the DCF, in his individual capacity; and (4) William Penley, the former District 7 Administrator of the DCF, in his individual capacity.[4] The complaint alleged that Behrens was denied his procedural due process rights under the Fourteenth Amendment because the DCF classified him as a "verified" child abuser without giving him the opportunity for a name-clearing hearing. Behrens also alleged that his substantive due process and privacy rights were infringed in violation of the United States Constitution.[5] In the

2. Section 39.202 lists the other limited circumstances in which child abuse records may be disclosed. *See* Fla. Stat. Ann. § 39.202(2).

3. Specifically, Behrens' complaint alleged: "Plaintiff tried to adopt another child but is unable to receive a favorable home study due to the stigmatization of his name remaining on the Child Abuse Registry as a verified child abuser. Without a favorable home study, plaintiff will not be able to adopt another child."

4. Section 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

42 U.S.C. § 1983.

5. Behrens raised privacy and procedural due process claims under the Florida Constitution as well.



complaint, Behrens sought monetary damages and declaratory and injunctive relief.[6]

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants moved to dismiss Behrens' complaint for failure to state a claim. In their motions, Defendants argued, *inter alia*, that they were entitled to the defense of qualified immunity.[7] The district court granted the motions to dismiss, finding Behrens' factual allegations, even if accepted as true, did not make out a violation of any federal constitutional right.[8] This appeal followed.

## II. STANDARD OF REVIEW

"We review de novo a district court's dismissal under Rule 12(b)(6) for failure to state a claim, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *Swann*, 388 F.3d at 836.

## III. DISCUSSION

The primary issue on appeal is whether the DCF violated Behrens' procedural due process rights when it classified him as a "verified" child abuser without giving him the benefit of a name-clearing hearing. We will address this issue first, and then turn to Behrens' remaining constitutional claims.

### A. *Procedural Due Process Claim*

The initial question with any due process challenge is "whether the injury claimed by the plaintiff is within the scope of the Due Process Clause." *Smith ex rel. Smith v. Siegelman*, 322 F.3d 1290, 1296 (11th Cir. 2003). "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972); *see also id.* at 570–71, 92 S.Ct. at 2705–06 ("But, to determine whether due process requirements apply in the first place ... [w]e must look to see if the interest is within the Fourteenth Amendment's protection of liberty and property.") (citation omitted). In this case, the central

6. The complaint, however, was sparse on details. In particular, it did not explain whether Behrens and his wife had applied to adopt another child through the DCF or through a private agency. At oral argument, we learned the Behrenses used a private agency. It is worth noting that according to the Florida Administrative Code, if Behrens had filed for an adoption through the DCF, which he apparently did not, an "Adoption Review Committee" would be available to examine the "verified" finding of abuse. *See* Fla. Admin. Code R. 65C-16.005(9)(a)(2). Furthermore, if the Behrenses did, in fact, receive an unfavorable home study, the complaint does not explain whether or not a court was petitioned to review the suitability of their home, as permitted under Florida law. *See* Fla. Stat. Ann. § 63.092(3).

7. The Supreme Court has established a two-part test for qualified immunity analysis. *Smith ex rel. Smith v. Siegelman*, 322 F.3d 1290, 1295 (11th Cir.2005). "The threshold inquiry a court must undertake ... is whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736, 122 S.Ct. 2508, 2513, 153 L.Ed.2d 666 (2002) (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001)). "If a court finds the violation of a constitutional right under the plaintiff's version of the facts, 'the next, sequential step is to ask whether the right was clearly established.'" *Smith*, 322 F.3d at 1295 (quoting *Saucier*, 533 U.S. at 201, 121 S.Ct. at 2156). Because we conclude Behrens failed to sufficiently allege any constitutional violation, we need not consider the second step of the qualified immunity analysis.

8. After dismissing the federal claims, the district court declined to exercise supplemental jurisdiction over the remaining state-law claims. Accordingly, the state-law claims were dismissed without prejudice. Behrens has only appealed the district court's dismissal of his federal constitutional claims.

issue is whether Behrens has sufficiently alleged the deprivation of a constitutionally protected liberty or property interest, such that the procedural guarantees of the Due Process Clause have been triggered.[9]

[1] Behrens' § 1983 action alleges DCF officials inflicted a stigma to his reputation that has impaired his ability to adopt another child. The Supreme Court, however, has held that injury to reputation, by itself, does not constitute the deprivation of a liberty or property interest protected under the Fourteenth Amendment. *Paul v. Davis,* 424 U.S. 693, 701–02, 712, 96 S.Ct. 1155, 1160–61, 1165–66, 47 L.Ed.2d 405 (1976). The *Paul* Court "expressed concern that the Fourteenth Amendment not be interpreted so as to make it 'a font of tort law to be superimposed' upon a state whenever a state law official commits a tort." *Von Stein v. Brescher,* 904 F.2d 572, 581 (11th Cir.1990) (quoting *Paul,* 424 U.S. at 701, 96 S.Ct. at 1160). The Court explained that, in order to invoke the procedural protections of the Due Process Clause, a plaintiff would need to establish *more* than a mere defamation claim. *Paul,* 424 U.S. at 706, 96 S.Ct. at 1163; *see also Siegert v. Gilley,* 500 U.S. 226, 233, 111 S.Ct. 1789, 1794, 114 L.Ed.2d 277 (1991) ("Defamation, by itself, is a tort actionable under the laws of most States, but not a constitutional deprivation.").

[2] Essentially, the *Paul* Court "established what has come to be known as the 'stigma-plus' test." *Cannon v. City of West Palm Beach,* 250 F.3d 1299, 1302 (11th Cir. 2001) (citing *Moore v. Otero,* 557 F.2d 435, 437 (5th Cir.1977)).[10] Under this test, "a plaintiff claiming a deprivation based on defamation by the government must establish the fact of the defamation 'plus' the violation of some more tangible interest before the plaintiff is entitled to invoke the procedural protections of the Due Process Clause." *Id.* (citing *Paul,* 424 U.S. at 701–02, 96 S.Ct. at 1161). In considering what satisfies the "plus" prong of this analysis, the *Paul* Court looked to whether state action had significantly altered or extinguished "a right or status previously recognized by state law." *Paul,* 424 U.S. at 711, 96 S.Ct. at 1165.[11]

9. If Behrens can overcome this initial hurdle, we would then turn to the next two steps of our procedural due process analysis—that is, whether there was state action, and whether the procedures associated with his alleged deprivation were constitutionally inadequate. *Grayden v. Rhodes,* 345 F.3d 1225, 1232 (11th Cir.2003) ("In this circuit, a § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process.").

10. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

11. The *Paul* Court explained:

> It is apparent from our decisions that there exists a variety of interests which are difficult of definition but are nevertheless comprehended within the meaning of either "liberty" or "property" as meant in the Due Process Clause. These interests attain this constitutional status by virtue of the fact that they have been initially recognized and protected by state law, and we have repeatedly ruled that the procedural guarantees of the Fourteenth Amendment apply whenever the State seeks to remove or significantly alter that protected status .... It was this alteration, officially removing the interest from the recognition and protection previously afforded by the State, which we found sufficient to invoke the procedural guarantees contained in the Due Process Clause of the Fourteenth Amendment.

*Paul,* 424 U.S. at 710–11, 96 S.Ct. at 1165 (citations and footnote omitted). The Court also pointed out that other interests are "protected not by virtue of their recognition by the law of a particular State but because they are guaranteed

[3] In keeping with *Paul,* this Court has succinctly summarized what is required to satisfy the stigma-plus test: "To establish a liberty interest sufficient to implicate the fourteenth amendment safeguards, the individual must be not only stigmatized but also stigmatized in connection with a denial of a right or status previously recognized under state law." *Smith,* 322 F.3d at 1296 (citation omitted); *see also Cypress Ins. Co. v. Clark,* 144 F.3d 1435, 1436–37 (11th Cir.1998) ("This rule, labeled the 'stigma-plus' standard, requires a plaintiff to show that the government official's conduct deprived the plaintiff of a previously recognized property or liberty interest in addition to damaging the plaintiff's reputation.").

We must decide whether the alleged *stigma* to Behrens' reputation, *plus* his alleged inability to adopt another child, amounts to a deprivation of a constitutionally protected liberty interest.[12]

1. *Stigma*

There is no doubt that the DCF stigmatized Behrens when it "verified" the child abuse allegations against him. This Court and several of our sister circuits have noted that such allegations are damaging to one's reputation. *See, e.g., Smith,* 322 F.3d at 1296 ("There is no question that the child sexual abuse allegations here may stigmatize a person ...."); *Dupuy v. Samuels,* 397 F.3d 493, 513–14 (7th Cir.2005) ("[L]abeling someone as a child abuser calls into question that person's 'good name, reputation, honor, or integrity.' "); *Valmonte v. Bane,* 18 F.3d 992, 1000 (2d Cir.1994) ("There is no dispute that Valmonte's inclusion on the list potentially damages her reputation by branding her as a child abuser ...."). The more difficult question is whether Behrens has satisfied the "plus" requirement. If the DCF has only defamed Behrens—without depriving him of any right or status recognized under state law—then his injury does not rise to the level of a constitutional deprivation and his procedural due process claim must fail. *See Paul,* 424 U.S. at 712, 96 S.Ct. at 1166; *see also Von Stein,* 904 F.2d at 581.

2. *"Plus"*

[4] Behrens contends he has been deprived of a protected liberty interest because the stigmatizing state action interfered with his alleged right to adopt another child. Behrens further claims he has attained a protectable legal status due to the fact that he previously adopted a child. Essentially, Behrens asserts that he and his wife have a distinct status as a family previously approved by the State of Florida to adopt a child. He argues the DCF altered that status by verifying the child abuse allegations, which has, in turn, limited his ability to adopt.

However, as *Paul* demonstrated, Behrens must show that his alleged right or status has been previously recognized and protected under state law. *Paul,* 424 U.S. at 710–11, 96 S.Ct. at 1165; *see also Smith v. Org. of Foster Families for Equal. & Reform,* 431 U.S. 816, 845–46, 97 S.Ct. 2094, 2110, 53 L.Ed.2d 14 (1977) (noting that when the "claimed interest" derives from a contractual

in one of the provisions of the Bill of Rights which has been 'incorporated' into the Fourteenth Amendment." *Id.* at 711 n. 5, 96 S.Ct. at 1165 n. 5.

12. We note that this case is *not* about Behrens' relationship with his already-adopted child. With regard to that child, Behrens, of course, has full parental and custodial rights. Instead, this case considers whether Behrens has any protected right or interest in the prospective adoption of *another* child.

relationship with the state, "it is appropriate to ascertain from state law the expectations and entitlements of the parties"). Behrens has failed to point to any provision of Florida law that grants prospective adoptive parents, like him and his wife, the right to adopt an unrelated child. In fact, Florida courts have held that no such right exists. *See, e.g., Dep't of Children & Family Servs. v. I.B.*, 891 So.2d 1168, 1170 (Fla. 1st DCA 2005) (finding that the prospective adoptive parents "do not have ... a legal right to adopt"); *Buckner v. Family Servs. of Cent. Florida, Inc.*, 876 So.2d 1285, 1288 (Fla. 5th DCA 2004) (noting that "[u]nder Florida law, adoption is not a right").

Additionally, Behrens cannot establish that, under Florida law, he has any legal claim of entitlement to have his adoption application approved. *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989) ("[A]n individual claiming a protected interest must have a legitimate claim of entitlement to it."). Florida's adoption laws—like the adoption laws of most states—provide that the decision to place a child in a prospective home is a discretionary one, where the "best interests of the child" always govern. *See* Fla. Stat. Ann. § 63.022(2) ("It is the intent of the Legislature that in every adoption, the best interest of the child should govern and be of foremost concern in the court's determination."). In reviewing Florida's adoption scheme, this Court has noted "that persons seeking to adopt are merely requesting that the state make a decision to investigate the candidate's background to determine if their environment would serve the best interests of a child." *Lofton v. Sec'y of the Dep't of Children & Family Servs.*, 358 F.3d 804, 810 n. 6 (11th Cir.2004) (internal quotation marks and citation omitted). Hence, adoption is not viewed from the perspective of what rights potential parents may possess; rather, the "intended beneficiary of [an adoption] proceeding is the child to be adopted." *Rushing v. Bosse*, 652 So.2d 869, 873 (Fla. 4th DCA 1995); *see also Lofton*, 358 F.3d at 811 ("[T]he state's overriding interest is not providing individuals the opportunity to become parents, but rather identifying those individuals whom it deems most capable of parenting adoptive children and providing them with a secure family environment."); *Lindley v. Sullivan*, 889 F.2d 124, 133 (7th Cir.1989) ("State adoption proceedings center upon the best interest of the *child*, not the desires, however intense, of potential parents to add to their family by adoption.").

In the context of the foster family relationship, the Supreme Court has noted "that the typical foster-care contract gives the agency the right to recall the child 'upon request,' and ... the discretionary authority vested in the agency 'is on its face incompatible with [the foster parents'] claim of legal entitlement.'" *Smith*, 431 U.S. at 860, 97 S.Ct. at 2118 (Stewart, J., concurring) (citation omitted); *see also Thompson*, 490 U.S. at 462–63, 109 S.Ct. at 1909–10 (explaining that a state creates a liberty interest when a statute or regulation limits the discretion of the decisionmaker and uses "explicitly mandatory language" requiring a particular outcome if certain conditions are met). As mentioned earlier, Florida law grants licensed adoption agencies, and the courts which ultimately approve adoptions, the discretionary authority to make a decision in the child's best interests. *See* Fla. Stat. Ann. §§ 63.022(2), 63.125(1), 63.142(4). Florida law does not place any substantive limitations on the exercise of this discretion with respect to the placement of an unrelated child in an adoptive home. Such discretion undermines Behrens' assertion that he has a protected inter-

est, or a claim of entitlement, in prospective adoption. Florida law does not create a justifiable expectation that Behrens' adoption application will be approved. Instead, Behrens has only "a unilateral hope" that he will be awarded custody of another child. *See Thompson*, 490 U.S. at 460, 109 S.Ct. at 1908 ("The types of interests that constitute 'liberty' and 'property' for Fourteenth Amendment purposes ... must rise to more than 'an abstract need or desire,' and must be based on more than 'a unilateral hope.' ") (citations omitted).[13]

Moreover, the prior adoption of his son did not provide Behrens with a protectable legal status. Under Florida law, the fact that a person has previously adopted a child does not confer him or her with the right to adopt again. The Florida Administrative Code has expressly rejected the existence of such a right:

> Families Who Adopt Again. Prior approval of a family to adopt does not automatically deem the family appropriate to adopt again .... Consideration of any family for placement of a subsequent child requires an updating of the previous study. Such an update will include an assessment of [eleven factors, including the well-being of the previously-adopted child, the motivation of the family for adopting again, the parents' health, the housing situation, the income of the family, and a review of the abuse hotline and criminal records].

Fla. Admin. Code R. 65C-16.005(6). Thus, Florida law provides that each adoption is a separate act that requires independent consideration and approval. As a result, the fact that Behrens was previously deemed fit to adopt a child did not provide him with a right or a distinct legal status that has been recognized and protected under Florida law.[14]

13. Although the foster family relationship differs from the situation before us, we note that several circuit courts, including this Court, have held that foster parents do not have a protected liberty interest in adopting or maintaining a relationship with the children who are temporarily in their care. *See, e.g., Drummond v. Fulton County Dep't of Family & Children's Servs.*, 563 F.2d 1200, 1206-08 (5th Cir.1977) (holding there is no protected liberty interest in maintaining the foster family relationship); *Rodriguez v. McLoughlin*, 214 F.3d 328, 336-41 (2d Cir.2000) (holding the foster parent did not possess a liberty interest in her relationship with the foster child); *Procopio v. Johnson*, 994 F.2d 325, 329 (7th Cir.1993) ("Notwithstanding the preference state law grants to foster families seeking to adopt their foster children, this priority does not rise to the level of an entitlement or expectancy."); *Wildauer v. Frederick County*, 993 F.2d 369, 373 (4th Cir.1993) (recognizing "that foster parents do not have a constitutionally protected liberty interest in a continued relationship with their foster child"). Furthermore, the Ninth Circuit has held that grandparents do not have a protected liberty interest in adopting their grandchildren. *Mullins v. Oregon*, 57 F.3d 789, 795-97 (9th Cir.1995). Behrens' alleged interest in prospective adoption is arguably weaker than the interests that were asserted and rejected in these cases. Behrens has never had any biological, custodial, emotional, or financial connection with the children he hopes to adopt.

14. We note that most stigma-plus cases involve claims by government employees who have been discharged or whose employment status has been otherwise negatively affected. *See, e.g., Cotton v. Jackson*, 216 F.3d 1328, 1330 (11th Cir.2000) ("[W]hen reputational damage is sustained in connection with a termination of [government] employment, it may give rise to a procedural due process claim for deprivation of liberty which is actionable under section 1983."); *Cannon*, 250 F.3d at 1303 ("[I]n this circuit a 'discharge [from employment] or more' is required in order to satisfy the 'plus' element of the stigma-plus test."). In such cases, we have explained that "when the government employs an individual, it may not terminate the relationship in a manner which might seriously damage his standing and associations in his community or foreclose his freedom to take advantage of other employment opportunities without affording him a due process hearing at which he can make a fair fight to clear his name." *Dennis v. S & S Consol. Rural High Sch. Dist.*, 577 F.2d 338, 342-43 (5th Cir.

Without a protected right or status, Behrens has alleged nothing more than a defamation claim. In *Siegert*, the Supreme Court held the plaintiff failed to establish a constitutional deprivation even though the stigmatizing statements "would undoubtedly damage the reputation of one in his position, and impair his future employment prospects." *Siegert*, 500 U.S. at 234, 111 S.Ct. at 1794. The Court explained:

> Most defamation plaintiffs attempt to show some sort of special damage and out-of-pocket loss which flows from the injury to their reputation. But so long as such damage flows from injury caused by the defendant to a plaintiff's reputation, it may be recoverable under state tort law but it is not recoverable in a *Bivens* action.[15]

*Id.*, 111 S.Ct. at 1794; *see also Cypress Ins. Co.*, 144 F.3d at 1438 ("The Supreme Court's message in *Siegert* is clear and unmistakable: Section 1983 did not make every tort committed by a state official a violation of constitutional rights.").

This Court recently relied on *Siegert* in reviewing a § 1983 action, where the plaintiff claimed he was stigmatized when his name and a report alleging child sexual abuse was entered into a central registry maintained by the Alabama Department of Human Resources. *Smith*, 322 F.3d at 1291–94. In rejecting his cause of action, we noted "that Smith's employment *and custody rights* in the future could be affected adversely due to the information on the Registry, but [such] conjecture overlooks *Paul's* insistence that reputational damage alone is insufficient to constitute a protected liberty interest." *Id.* at 1297 (emphasis added). Like *Siegert*, we explained "the deleterious effects that flow directly from a sullied reputation ... are normally insufficient" to establish a constitutional deprivation. *Id.* at 1298.

In sum, we conclude Behrens has failed to satisfy the "plus" requirement of the stigma-plus test. He has not demonstrated that the DCF, by verifying the report of child abuse, has significantly altered or extinguished any right or interest guaranteed to him by the State of Florida.[16] Since Behrens has only shown reputational damage, he has not alleged the deprivation of a constitutionally protected liberty or property interest. Accordingly, the district court did not err when it dismissed his procedural due process claim.

B. *Substantive Due Process and Privacy Claims*

Behrens' complaint also alleged violations of his constitutional rights to substantive due process and familial privacy. Behrens asserted the DCF violated these rights when it wrongfully labeled him a "verified" child abuser, and thereby effectively denied him and his wife the opportunity to adopt another

1978) (internal quotation marks and citation omitted). This Court has further noted that it was "the individual's status as a government employee" that provided the "plus" needed under the stigma-plus test. *Dennis*, 577 F.2d at 343. These cases, however, are inapposite to Behrens' situation because, under Florida law, there is no recognized and protected legal status in being a prior adoptive parent.

15. In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court held injured plaintiffs can bring a cause of action for damages against federal officers based on violations of their constitutional rights. This Court has noted that "[a] *Bivens* action is analogous to § 1983 suits against state and local officers." *Smith*, 322 F.3d at 1297 n. 15.

16. Moreover, in Part III.B. of this opinion, we conclude that Behrens has also failed to allege the deprivation of any right or interest grounded in the United States Constitution.

child. We conclude these claims are without merit.

[5, 6] "The substantive component of the Due Process Clause protects those rights that are 'fundamental,' that is, rights that are 'implicit in the concept of ordered liberty.'" *McKinney v. Pate,* 20 F.3d 1550, 1556 (11th Cir.1994) (en banc) (citation omitted); *see also Greenbriar Vill., L.L.C. v. Mountain Brook, City,* 345 F.3d 1258, 1262 (11th Cir. 2003) ("Fundamental rights are those rights created by the Constitution.") (citation omitted). In this case, Behrens has failed to allege the deprivation of any fundamental right. We have previously held that "[b]ecause there is no fundamental right to adopt or to be adopted, it follows that there can be no fundamental right to apply for adoption." *Lofton,* 358 F.3d at 812; *see also Mullins v. Oregon,* 57 F.3d 789, 794 (9th Cir.1995) (holding that prospective adoptive parents do not have "a fundamental liberty interest" in adoption); *Lindley v. Sullivan,* 889 F.2d 124, 131 (7th Cir.1989) (noting "that there is no fundamental right to adopt").

Moreover, we reject Behrens' assertion that his interest in adoption falls within the right to familial privacy. Behrens argues the DCF has intruded into his private family life because the allegations of abuse, which the DCF "verified," will interfere with his ability to expand his family through adoption. This Court, however, has held that potential parents do not have a privacy interest in adopting a child:

> The decision to adopt a child is not a private one, but a public act .... [P]rospective adoptive parents are electing to open their homes and their private lives to close scrutiny by the state. Florida's adoption application requires information on a variety of private matters, including an applicant's physical and psychiatric medical history, previous marriages, arrest record, financial status, and educational history. In this regard, Florida's adoption scheme is like any "complex social welfare system that necessarily deals with the intimacies of family life." Accordingly, such intrusions into family matters are on a different constitutional plane than those that "seek[ ] to foist orthodoxy on the unwilling by banning or criminally prosecuting" nonconformity.

*Lofton,* 358 F.3d at 810–11 (citations and footnote omitted). Other circuit courts have similarly rejected the type of privacy claim that Behrens now asserts. *See, e.g., Mullins,* 57 F.3d at 794 ("A negative right to be free of governmental interference in an already existing familial relationship does not translate into an affirmative right to create an entirely new family unit out of whole cloth."); *Lindley,* 889 F.2d at 131 ("We also decline to find that the interest in adopting a child falls within the marital privacy right, since the statute requires adopters to submit their personal lives to intensive scrutiny before the adoption may be approved.").

For these reasons, we conclude the district court did not err when it dismissed Behrens' privacy and substantive due process claims.

## IV. CONCLUSION

While Behrens may have one or more state-law causes of action, he chose to bring a constitutional claim under § 1983. In order for his § 1983 action to survive dismissal, Behrens needed to show more than a defamation claim. Indeed, the purpose behind the stigma-plus test is "to prevent the Due Process Clause from becoming an all-purpose constitutionalization of state tort law." *Cypress Ins. Co.,* 144 F.3d at 1437. We cannot conclude that Behrens has established the

violation of any constitutional right. Therefore, we affirm the district court's dismissal of Behrens' complaint.

AFFIRMED.

A True Copy - Attested:
Clerk U.S. Court of Appeals,
Eleventh Circuit

By: ______
Deputy Clerk
Atlanta, Georgia

# United States Court of Appeals

Eleventh Circuit
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

**Thomas K. Kahn**
Clerk

For rules and forms visit
www.ca11.uscourts.gov

October 19, 2005

FILED
2005 OCT 25 PM 2:25
U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

Sheryl L. Loesch
Clerk, U.S. District Court
80 N HUGHEY AVE STE 300
ORLANDO FL 32801-2225

**Appeal Number: 04-14820-CC**
Case Style: Jason K. Behrens v. Jerry Regier
District Court Number: 04-00715 CV-ORL-22-JGG

The enclosed certified copy of the judgment and a copy of this court's opinion are hereby issued as the mandate of this court.

Also enclosed are the following:

Original record on appeal or review, consisting of: one volume

1 VP

The district court clerk is requested to acknowledge receipt on the copy of this letter enclosed to the clerk.

A copy of this letter, and the judgment form if noted above, but not a copy of the court's decision, is also being mailed to counsel and pro se parties. A copy of the court's decision was previously mailed to counsel and pro se parties on the date it was issued.

Sincerely,

THOMAS K. KAHN, Clerk

Reply To: James O. Delaney (404) 335-6113

Encl.